UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jehan Mir, Pro Se | Steven Wang<br>Randall Miller<br>Thomas Robins, III<br>Timothy Coates |

**Proceedings:** DEFENDANT WESTPORT INSURANCE CORPORATION'S MOTION TO DISMISS THE FAC (Dkt. No. 57, filed November 10, 2014)

DEFENDANT JAY BROWN'S MOTION TO DISMISS THE FAC (Dkt. No. 59, filed November 10, 2014)

DEFENDANT WESTPORT INSURANCE CORPORATION'S MOTION FOR RULE 11 SANCTIONS (Dkt. No. 70, filed December 15, 2014)

DEFENDANT JAY BROWN'S MOTION FOR RULE 11 SANCTIONS (Dkt. No. 71, filed December 15, 2014)

## I. INTRODUCTION

Plaintiff Jehan Zeb Mir, MD filed this lawsuit on May 29, 2014, Dkt. No. 1, and the operative First Amended Complaint ("FAC") on October 27, 2014, Dkt. No. 55. The FAC names as defendants (1) Greines, Martin, Stein & Richland LLP as well as that law firm's current or former attorneys Irving H. Geines, Alan Martin, Martin Stein, Kent L. Richland, Marc J. Poster, Jens B. Koepke, Peter O. Israel, Melissa Laffin, Sandra J.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
| --- | --- | --- | --- |
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

Smith, Peggy Levenstein, and Jordan Rafael;[1] (2) Frandzel Robins Bloom & Csato, L.C. and that law firm's current or former attorneys Peter Csato, Bob Benji, and Eleane Pang;[2] (3) Iungerich & Spackman, A Professional Law Corporation, and individuals Russell Iungerich and Paul Spackman;[3] (4) Westport Insurance Corporation ("Westport"), and (5) individual Jay Brown ("Brown"). The FAC asserts claims under federal civil rights statutes, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and California law.

Presently before the Court are motions to dismiss the FAC filed by two defendants. On November 10, 2014, Westport filed a motion to dismiss for failure to state a claim and for failure to meet pre-filing requirements for a vexatious litigant. Dkt. No. 57. On that same date, Brown filed a motion to quash summons or dismiss for lack of personal jurisdiction. Dkt. No. 59. On December 30, 2014, plaintiff filed oppositions to the aforementioned motions, as well as requests for judicial notice.[4] Dkt Nos. Dkt. Nos. 78–80. On January 8, 2015, Wesport and Brown filed replies in support of their respective motions to dismiss. Dkt. Nos. 82, 83. On January 12, 2015, the Court heard oral argument on these motions. After considering the parties' arguments, the Court finds and concludes as follows.[5]

---

[1]The Court refers to this law firm as "Greines Martin" and to the firm and its affiliated defendants collectively as the "Greines Martin defendants."

[2]The Court refers to this law firm as "FRBC" and to the firm and its affiliated defendants collectively as the "FRBC defendants."

[3]The Court refers to this law firm as "I&S" and to the firm and its affiliated defendants collectively as the "I&S defendants."

[4]The Court does not rule on Westport's requests for judicial notice because it finds doing so unnecessary to determine the outcome of the instant motion.

[5]This Court's Local Rule 7-9 provides that any opposition to a motion shall be served and filed "not later than twenty-one (21) days before the date designated for the hearing of the motion." C.D. Cal. L.R. 7-9. Plaintiff filed his oppositions to the instant motions on December 30, 2014, only 13 days before the January 12, 2015 hearing.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 2 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

## II. FACTUAL BACKGROUND

The FAC alleges the following facts. In 1985, plaintiff, a physician, was terminated from Charter Suburban Hospital in Paramount, California (the “hospital”) for alleged misconduct. FAC ¶ 44. Plaintiff succeeded in overturning these disciplinary charges through several rounds of review. Id. ¶¶ 45–48. I&S successfully represented plaintiff on a fee-for-service basis in writ proceedings connected to the charges. Id. ¶ 50.

In December 1992, plaintiff retained law firm I&S to represent him on a fee-for-service basis in an action against the hospital and related defendants to recover income plaintiff allegedly lost as a result of the disciplinary proceedings. Id. ¶¶ 51–52. Plaintiff alleges that I&S wanted to represent plaintiff on a contingency fee basis, and retaliated against plaintiff’s insistence on a fee-for-service arrangement by first overcharging plaintiff, and then sabotaging his case. Id. ¶¶ 53–59. A California state court dismissed plaintiff’s claim for interference with prospective economic advantage, which dismissal plaintiff contends was due to I&S’s failure to properly amend a complaint. Id. ¶ 59. Plaintiff alleges that I&S then “filed frivolous writs” with California appellate courts challenging that dismissal, while continuing to overcharge plaintiff. Id. ¶¶ 60–65. At trial, plaintiff alleges that Russell Iungerich improperly stipulated to exclude evidence crucial to plaintiff’s claims. Id. ¶ 68. The court granted a non-suit for lack of evidence of malice, a required element of plaintiff’s malicious prosecution claim. Id. ¶ 69. Plaintiff alleges that I&S overbilled for trial services as well. Id. ¶ 71.

In 2001, plaintiff filed a malpractice suit against I&S and three of its attorneys for their handling of plaintiff’s litigation against the hospital, which litigation the Court hereinafter refers to as “Mir v. I&S.” Id. ¶ 72. The defendants in Mir v. I&S cross-complained for unpaid legal fees from the hospital litigation in the amount of $58,000

---

Westport and Brown request that the Court grant their motions to dismiss on this ground alone. Although the Local Rules permit the Court to deem failure to file a timely opposition “consent to the granting” of a motion, C.D. Cal. L.R. 7-9, the Court has considered plaintiff’s oppositions. Plaintiff is nevertheless admonished to follow the Local Rules in future proceedings, and that an assumption that the Court will grant a stipulation or *ex parte* application is no excuse for failing to meet a deadline.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 3 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

plus attorneys' fees, costs, and interest.[6] Id. Plaintiff and Russell Iungerich attended a mediation conference on June 28, 2001. Id. ¶ 74. During this conference, an attorney for Westport (which, as discussed below, insured I&S against malpractice lawsuits at the time) prepared a handwritten document entitled "Settlement Terms" that, according to plaintiff, contemplated a payment of $45,000 to settle plaintiff's malpractice suit, and did not mention the cross-complaint or plaintiff's waiver of any rights with respect to that cross-complaint. Id. ¶ 75. Plaintiff signed the document, but denies that any binding contract was thereby created. Id. ¶¶ 76–83.

On September 19, 2001, the I&S defendants successfully moved to enforce the Settlement Terms. Id. ¶ 84. Plaintiff maintains that the California court that enforced the Settlement Terms did so in error. Id. ¶ 85. On January 27, 2003, the state court held a bench trial solely on the cross-complaint. Id. ¶ 91. On March 1, 2003, the court awarded Russell Iungerich a judgment on the cross-complaint in the amount of $85,147.06.[7] Id. ¶ 92. On March 19, 2003, the court awarded an additional $15,750 in attorneys' fees, bringing the total judgment to $100,897.06.[8] Id. ¶ 93. Russell Iungerich transferred this judgment from his name to the I&S firm. Id. ¶ 94. On June 6, 2003, I&S and FRBC filed a Writ of Execution on this judgment with the Clerk of the Superior Court of California for the County of Los Angeles ("Los Angeles County Superior Court"). Id. ¶ 95. On February 10, 2004, I&S filed a Notice of Lien in the Los Angeles County Superior Court, imposing a lien based on the cross-complaint judgment against the settlement amount due Mir to be paid by Westport. Id. ¶ 98. On April 23, 2004, unspecified defendants filed a memorandum of costs after judgment in the additional amount of $51,028.99 for attorney

---

[6]Plaintiff alleges that the retainer agreement between plaintiff and I&S entered into for purposes of the hospital litigation provided that the "prevailing party in any action or proceeding to enforce any provisions of this agreement will be awarded reasonable attorneys' fees and costs incurred in that action or proceeding." FAC ¶ 11.

[7]This award consisted of $57,840.78 in attorneys' fees owed from the previous litigation, $26,828.63 in interest, and $477.65 in costs. FAC ¶ 92.

[8]It appears that these additional attorneys' fees were for prosecuting the cross-complaint itself.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

fees for conducting debtor examinations.[9] Id. ¶ 99. Defendant asserts that no judgment on this amount was ever requested or entered. Id.

On May 16, 2003, plaintiff appealed the Mir v. I&S judgment. Id. ¶ 96. I&S was represented on appeal by Greines Martin. Id. ¶ 97. The Court of Appeal affirmed the appealed-from judgment and the order enforcing the Settlement Terms Id. ¶¶ 102–06. Plaintiff maintains that Greines Martin's opposition briefing was "substandard" and that Greines Martin must have "improperly influenced" the Court of Appeal justices in an unspecified manner in order to prevail. Id. ¶ 100. On February 23, 2005, I&S and the Greines Martin defendants filed an application for attorneys' fees and costs for the appeal in the Mir v. I&S litigation, which the trial court granted in the amount of $76,909. Id. ¶¶ 114–16. Plaintiff appealed this award of attorneys' fees, and the Court of Appeal affirmed. Id. ¶ 117. On May 8, 2006, the Greines Martin defendants filed an application for attorneys' fees for appeal of the original attorneys' fee award in Mir v. I&S, in the amount of $30,160.10.

On November 5, 2004, I&S filed a complaint in the Los Angeles County Superior Court for fraudulent conveyance of a property plaintiff sold in 2001. Id. ¶ 107. The complaint cited as a basis for standing the unpaid judgment against plaintiff. Id. ¶ 108. Plaintiff contends that the sale was proper and the fraudulent conveyance suit baseless. Id. ¶¶ 109–11. I&S filed a lis pendens on the property. Id. ¶ 111. On December 6, 2005, I&S agreed to settle the fraudulent conveyance lawsuit for $35,000. Id. ¶ 118. Plaintiff wired $35,000 to the buyer of the property, who then transferred that amount to I&S. Id. ¶ 120.[10]

For some period relevant to the Mir v. I&S litigation, I&S carried a professional liability insurance policy issued by Westport under Policy Number CAS055873. Id.

---

[9]It is not entirely clear from the FAC which defendants filed this memorandum, but it seems most likely based on context to be the I&S defendants.

[10]Plaintiff also alleges that I&S "and others" continued to retaliate against plaintiff by working with the Torrance, California police to start a criminal investigation into fraudulent conveyance of the same property. Id. ¶¶ 132–33.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 5 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

¶ 124. I&S allegedly filed a claim with Westport for Greines Martin's attorneys' fees in connection with the Mir v. I&S matter, and Westport allegedly paid Greines Martin all of its billed fees in connection with that case. Id. ¶¶ 125, 129. Plaintiff asserts that the I&S and Greines Martin defendants did not disclose to plaintiff or the California courts that Westport had paid the same attorneys' fees that the I&S and Greines Martin defendants attempted to collect from plaintiff, and alleges that the insurance company and two law firms entered into a confidential agreement to conceal said payments. Id. ¶¶ 126–28. Plaintiff also contends that Westport paid I&S $45,000 for the Settlement Terms judgment against plaintiff. Id. ¶ 131.

On July 17, 2006, I&S, FRBC, and Peter Csato filed a Writ of Execution with the Clerk of the Los Angeles County Superior Court relating to the Mir v. I&S judgment, in the amount of $100,897.06 plus interest of $33,944.33 through July 12, 2006, with an additional $28.03 in interest from the date of application.[11] Id. ¶ 134. Plaintiff alleges that the amount of interest was improperly calculated on an amount which already included interest. Id. Plaintiff also protests that the Writ of Execution did not reflect "any credit for" the $45,000 I&S had received from Westport in connection with the Mir v. I&S settlement, or the $35,000 I&S had received in connection with the fraudulent conveyance settlement. On March 28, 2007, I&S, FRBC, and Peter Csato filed a similar Writ of Execution, again without giving credit for the $45,000 and $35,000 payments, and again without including the appellate attorneys' fees. Id. ¶¶ 138–39. The same defendants filed another Writ of Execution on May 14, 2010, in the same base amount of $100,897.06 and without crediting the $45,000 or $35,000 payments, but this time claiming accrued interest of $72,205.28 plus $28.03 per day from the date of application. Id. ¶ 141. The amounts asserted in the 2006, 2007, and 2010 Writs of Execution did not include appellate attorney fees awarded to I&S against plaintiff. Id. ¶¶ 135, 139, 142.

On March 15, 2013, the I&S and FRBC defendants filed an Amended Application for Renewal of Judgment in a total amount of $438,594.16. Id. ¶ 143. On March 18, 2013, I&S and FRBC recorded a Notice of Involuntary Lien and Amended Application for Renewal of judgment in that same amount. Id. ¶ 144.

---

[11] Plaintiff asserts that the Writs of Execution were served by mail and published on the Los Angeles County Superior Court's website. See, e.g., id.. ¶¶ 135–37, 139, 143.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 6 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

On March 21, 2013, plaintiff moved to set aside and vacate the renewal of judgment on the grounds that I&S and FRBC (1) improperly failed to credit the $35,000 settlement received in the fraudulent conveyance action; (2) compounded interest upon interest; (3) unlawfully applied the $45,000 malpractice settlement payment to accrued interest instead of principal; (4) improperly included costs for which they had previously filed a memorandum of costs, but not obtained a judgment; and (5) improperly included in the judgment attorneys' fees in the amount of $76,909 and $30,160 that had already been paid by Westport, thus engaging in "double dipping" and "unjust enrichment." Id. ¶ 147. In a reply brief on the motion to set aside and vacate the renewal of judgment, plaintiff also argued that the attorneys' fee judgments were subject to collateral attack because the I&S, FRBC, and Greines Martin defendants had fraudulently concealed payments of the same from Westport, breached fiduciary duties to plaintiff, and misled the courts. Id. ¶¶ 151–58.

On May 31, 2013, the state court found that I&S had incorrectly applied $45,000 first to accrued interest instead of to principal. Id. ¶ 162. According to plaintiff, the court "did not mention in its Ruling or rule on" plaintiff 's other contentions of error. Id. ¶¶ 163–167. The state court amended the amount of judgment to $408,610.60 and ordered entry of renewal of judgment of this amount *nunc pro tunc* to February 14, 2013. Id. ¶ 168. In June 2013, plaintiff objected to the renewed judgment on the ground that the court had no jurisdiction to enter judgment *nunc pro tunc*.[12] Id. ¶ 170. On June 13, 2013, I&S and FRBC filed a Second Amended Application for Renewal of Judgment. Id. ¶ 173. Plaintiff alleges that I&S and FRBC fraudulently altered a form in order to induce the court to enter this amended judgment *nunc pro tunc*. Id. ¶¶ 173–76. On June 17, 2013, plaintiff filed Amended Objections to Judgment, arguing that the judgment was not timely renewed and that the court had failed to consider plaintiff's other objections to the amount of judgment described above. Id. ¶ 177. On June 20, 2013, the state court ordered that the Second Amended Application for Renewal of Judgment could be entered *nunc pro tunc* to February 24, 2013. Id. ¶ 178. Plaintiff attempted through another

[12]Plaintiff alleges that had the court not entered the order *nunc pro tunc*, the judgment would not have been renewed in time to avoid a ten-year statute of limitations for renewal of judgment. FAC ¶ 168.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

motion to have that application stricken, but the court rejected that motion as well. Id. ¶¶ 179–90.

## III. DEFENDANT JAY BROWN’S MOTION TO QUASH SERVICE OF SUMMONS OR DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Jay Brown (“Brown”), a Kansas resident, argues that this Court lacks personal jurisdiction over him, and that all claims against him must therefore be dismissed. For the reasons that follow, the Court agrees.

### A. Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir.2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff’d, 248 F.3d 915 (9th Cir. 2001). Plaintiff’s version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties’ affidavits must be resolved in plaintiff’s favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must “come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.” Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int’l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state’s long-arm statute and (2) the “exercise of that jurisdiction does not violate federal due process.” Pebble Beach, 453 F.3d at 1154-55 (citing Fireman’s Fund Ins. Co. v. Nat’l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California’s long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. Cal. Civ. Proc. Code §

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 8 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment’s Due Process Clause requires that a defendant have “minimum contacts” with the forum state so that the exercise of jurisdiction “does not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant’s activities within the forum state are “substantial” or “continuous and systematic,” even if the cause of action is “unrelated to the defendant’s forum activities.” Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is “fairly high” and requires that the defendant’s contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat’l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). “Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state’s markets, designates an agent for service of process, holds a license, or is incorporated there.” Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant’s forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 9 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the "extent of the defendant's purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) the "extent of conflict with the sovereignty of the defendant's state," (4) the forum state's "interest in adjudicating the dispute"; (5) the "most efficient judicial resolution of the controversy"; (6) the "importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

### B. Jurisdictional Facts

Brown submits a declaration under penalty of perjury attesting to the following facts. Brown is a resident of Kansas, and has never lived in California. Brown Decl. ¶¶ 2, 9. He is a Senior Vice President and Senior Legal Counsel for Swiss Re America Holding Corporation, and in that capacity provides legal services for defendant Westport. Id. ¶ 1. Westport is a Missouri corporation with its principal administrative office in Kansas. Id.

Brown is an attorney licensed in the state of Kansas. Id. He is not, nor has he ever been, a member of the California State Bar, nor has he ever engaged in the practice of law in California or appeared before a California court. Id. ¶¶ 6–7. He has not advertised in California. Id. ¶ 8. He has not owned real estate or maintained any bank account, address, or telephone number in California. Id. ¶ 9–10.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 10 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

Since 2009, Brown has traveled to California for three vacations, the longest of which lasted one week. Id. ¶ 11. During that same time, in his capacity as counsel for Westport, Brown has traveled to California on four separate occasions to attend mediations, with each visit lasting two days or less. Id. None of these trips involved the plaintiff or any party to this case aside from Westport. Id.

Brown declares that his only involvement in the events giving rise to this lawsuit involved a subopoena duces tecum served on Westport’s Kansas offices in May 2013. Id. ¶ 12. Brown worked out of his Kansas office in responding to and drafting objections to the subpoena. Id. On May 29, 2013, plaintiff called Brown at his office in Kansas to inquire about Westport’s response to the subpoena. Id. ¶ 13. During this telephone conversation, Brown informed plaintiff that Westport was not planning on producing documents in response to the subpoena and was preparing objections to the subpoena, including that the subpoena was not properly served. Id. Brown also asserted that it was unreasonable to demand productions of eight-to-ten-year-old documents on less than two business days’ notice, and that the requests included privileged information. Id. Brown declares that, during the telephone conversation, plaintiff alleged that Westport was committing fraud by refusing to produce the documents, and that plaintiff would file a federal lawsuit if the documents were not produced. Id. Brown also had a single phone call with defendant Russell Iungerich, prepared Westport’s objections to the subpoena from his Kansas office, and then faxed the objections to California. Id. ¶ 14.

The FAC includes an account of the subpoena and telephone call that is essentially consistent with Brown’s declaration. Plaintiff alleges that on May 24, 2013, he caused to be served a subpoena on Westport. FAC ¶ 159. Plaintiff later spoke to Brown, an in-house attorney for Westport, who stated that he would not be releasing documents in response to the subpoena because “he did not have enough time” and because of “claimed confidentiality” and “unspecified attorney-client privilege.” Id. ¶ 160. The FAC alleges several times that Brown was part of a confidential agreement and/or conspiracy not to disclose information. See, e.g., FAC ¶¶ 326,332, 346, 353, 355. But plaintiff does not appear to allege any factual basis for Brown’s involvement in such a conspiracy aside from the subpoena-related events described above.

Brown denies having any further involvement in the underlying matter, or any other contact with California concerning the matter. Id. He specifically denies having

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 11 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

had "any involvement in the defense, settlement, appeal, or judgment enforcement" in the "underlying dispute between Dr. Mir and [I&S]." Id. ¶ 15; see id. ("My involvement has been limited to my work on the Subpoena Duces Tecum . . . as part of my job responsibilities as in-house counsel for Westport."). Id. Brown has never represented plaintiff or I&S in any capacity. Id. ¶ 16.

To the extent that the FAC could be read to imply unidentified actions by Brown involving California and this matter, Brown denies any such actions, and plaintiff submits no affidavit or other evidence to contradict such denials. Therefore, the Court must accept as true Brown's declaration under penalty of perjury that his only involvement in the events underlying this litigation consists of the actions taken with regard to the subpoena. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) (explaining in considering personal jurisdiction that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"); Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that mere allegations of the complaint, when contradicted by affidavits, are enough to confer personal jurisdiction of a nonresident defendant. In such a case, facts, not mere allegations, must be the touchstone.").[13]

[13] In plaintiff's opposition, he asserts "Defendant Brown is not just haled into Court for not obeying the [subpoena]." Dkt. No. 78 at 16. He argues that "as Vice President" of Wesport, Brown was involved in interfering with plaintiff's contractual relationships and "permitting Defendants to 'double dip' in a conspiracy of silence." Id. This appears to be speculation that Brown had other involvement in Westport's alleged wrongdoing based purely on his job title, and does not provide additional jurisdictional *facts*. Plaintiff's speculation is also questionable in light of the fact that Brown is a Vice President and Senior Legal Counsel for *Swiss Re America Holding Corporation*, and provides legal counsel to Westport in that capacity. Moreover, as noted previously, Brown has denied any involvement in plaintiff's case aside from responding to the subpoena, and arguments raised in a brief "are not evidence" that this Court can credit over Brown's sworn declaration. Jersey Cent. Power & Light Co. V. Lacey Tp., 772 F.2d 1103, 1109 (3d Cir. 1985).

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 12 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

### C. Analysis

It is clear that none of the "traditional" bases for personal jurisdiction—personal service within the forum state, domicile or consent—apply here.[14] Plaintiff asserts that the Court has general and specific jurisdiction over Brown, and that Brown is properly before the Court under RICO's jurisdictional provisions. Each argument lacks merit.

1. General Jurisdiction

As noted above, for a state to exercise general personal jurisdiction over a defendant, the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, 223 F.3d at 1086. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Brown's contacts with California do not approach an approximation of physical presence. Brown lives and works in Kansas and has only been to California seven times in the last five years (each time for a week or less). He does not practice law in California or otherwise maintain "continuous and systematic" business ties with the state. He does not own real estate in California, and does not maintain bank accounts, addresses, telephone numbers, or employees in the state. In short, his contacts do not support general personal jurisdiction. See Cubbage v. Merchent, 744 F.2d 665, 667–68 (9th Cir. 1984) (no general jurisdiction over nonresident doctors not licensed in California, even though they had significant numbers of patients in the forum and used the forum state's medical insurance system and telephone directory listing), cert denied, 470 U.S. 1005 (1985).

[14]Plaintiff's argument that Brown waived his objection to personal jurisdiction by not including the words "Rule 12(b)(2)" in his motion is meritless. The substance of Brown's motion makes abundantly clear that he seeks dismissal for lack of personal jurisdiction: for example, he cites and argues binding cases applying the Rule 12(b)(2) standard. As the Ninth Circuit has explained, "Nomenclature is not important. The label or description that a party puts on its motion does not control whether the party should be granted or denied relief." Harvest v. Castro, 531 F.3d 737, 746 (9th Cir. 2008) (quoting 12 James Wm. Moore, Moore's Federal Practice § 60.64 (3d ed. 2006)).

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 13 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

In opposition, plaintiff essentially argues that Westport has significant contacts in California, and that those contacts must be imputed to Brown. The Supreme Court has rejected this argument. "Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984); id. ("Petitioners are correct that their contacts with California *are not to be judged according to their employer's activities there*." (emphasis added)); Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."); see also Colt Studio, Inc. v. Badpuppy Enterprise, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) ("The mere fact that a corporation is subject to local jurisdiction does not necessarily mean that its nonresident officers, directors, agents, and employees are suable locally as well."). The Court does not have general jurisdiction over Brown.

2. Specific Jurisdiction

As outlined above, courts apply a three-prong "minimum contacts" test to determine whether specific jurisdiction may be exercised:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d at 802. Here, the Court need only address the first prong, concerning purposeful direction or availment.

The plaintiff bears the burden of demonstrating the purposeful availment or direction prong, which "ensures that a defendant will not be haled into a jurisdiction

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 14 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475–78. The Ninth Circuit has explained that although courts "often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction . . . availment and direction are, in fact, two distinct concepts." Schwarzenegger, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," and is "most often used in suits sounding in contract." Id. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Id. "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Id. at 803.

Plaintiff argues that Brown purposefully availed himself of California's laws and protections because "[t]he sales contracts between Defendant Westport and other purchasers of insurance product[s] within [the] State of California could hardly be considered as not 'purposeful.' " Dkt. No. 78 at 12. But as discussed above, minimum contacts must be addressed as to each individual defendant, and Westport's insurance contracts and other California contacts cannot be imputed to Brown. See, e.g., Keeton, 465 U.S. at 781 n.13. Because Brown has never conducted significant business in California, advertised his services there, or the like, his representation of a Kansas-based company that does business in California cannot support a finding that he has purposefully availed himself of the privilege of conducting activities within California, even if that representation involved responding to a subpoena issued by a California court. See Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) ("Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state."); id. at 1366 (finding no jurisdiction over a lawyer that "represented a California client, and made phone calls and sent letters to California during the course of the representation, but [] had no other relevant contacts with the state").

Plaintiff also argues that specific jurisdiction over Brown exists because he purposefully directed his activities toward California, satisfying the "effects" test

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 15 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

originating in Calder v. Jones, 465 U.S. 783 (1984). The Ninth Circuit has described this test as follows:

> In Calder, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was "expressly aimed" at the forum state in which harm occurred. As we have previously recognized, Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." Based on these interpretations of Calder, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).

The Supreme Court recently discussed Calder in great detail. See Walden v. Fiore, 134 S. Ct. 1115 (2014). The Court stressed that, even where an intentional tort is alleged, the "defendant's suit-related conduct must create a substantial connection with the forum State," and this "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Id. at 1121–22 (emphasis in original) (quoting Burger King, 471 U.S. at 475). Furthermore, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 1122. Accordingly, even where the Calder test is invoked, a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum," and the specific jurisdiction analysis must focus on the "relationship among the defendant, the forum, and the litigation.' " Id. at 1123. The Court explained that

> the crux of Calder was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 16 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

> plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred *in* California. In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

Id. at 1124 (emphasis in original; citations omitted). The Court emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in any meaningful way." Id. at 1125. The Court also reemphasized that "unilateral activity" by someone other than the defendant (in Walden, a call from the Nevada plaintiff's Nevada attorney to the Georgia defendant) "cannot satisfy the requirement of contact with the forum state." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Plaintiff argues that Brown "knew that willfully disobeying the [subpoena] from Los Angeles County Superior Court would have risks and consequences," and that "the information was crucial to Plaintiff's motion to set aside" the judgment against him. Dkt. No. 78 at 12. Thus, he contends, Brown's decision not to produce documents in response to a California court's subpoena harmed a California resident, and subjects him to personal jurisdiction in California. This stretches Calder beyond its breaking point by attempting to base jurisdiction only on a tenuous connection to the plaintiff rather than to the forum state. All of Brown's relevant activities occurred in Kansas and were reactive in nature: he drafted objections to an out-of-state subpoena from his Kansas office, and received a phone call from plaintiff concerning that same subpoena. Brown cannot be said to have "expressly aimed" his actions at California; indeed, his only action in this

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 17 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

case was attempt to object to a subpoena on the ground that it was not properly served and enforceable on his Kansas-based client. “Due process requires that a defendant be haled into a court in a forum State based on his own affiliation with the State, not based on the ‘random, fortuitous, or attenuated’ contacts he makes by interacting with other persons affiliated with the State.” Walden, 134 S. Ct. at 1123 (quoting Burger King, 471 U.S. at 574)). To accept plaintiff’s reading of Calder would be to allow plaintiff to create personal jurisdiction through his own “unilateral” actions, rather than through “contacts that the defendant *himself* creates with the forum.” Id. at 1122–23 (emphasis in original; citations and quotation marks omitted). The Supreme Court has expressly counseled that this is not permitted, and that the relevant focus is not on “where the plaintiff experienced a particular injury,” but rather “whether the defendant’s conduct connects him to the forum in any meaningful way.” Id. at 1125. Here, did not engage in purposeful conduct meaningfully connecting him to the forum state, so the Court does not have specific jurisdiction over him.

3. Nationwide RICO Jurisdiction

The Court has already determined that due process would not allow a court in California to exercise general or specific jurisdiction over Brown. Plaintiff also asserts, however, that Brown is subject to nationwide jurisdiction under RICO. 18 U.S.C. § 1965, on which plaintiff relies, provides in relevant part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United Sates for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 18 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

18 US.C. § 1965.[15]

“Where a defendant is properly served in the United States under RICO’s nationwide service provision, that defendant’s national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant.” Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998). However, “the right to nationwide service in RICO suits is not unlimited.” Butcher’s Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986). “[M]erely naming persons in a RICO complaint does not in itself, make them subject to section 1965(b)’s nationwide service provisions.” Id. Rather, “in order to establish personal jurisdiction under Section 1965(b), [a plaintiff] must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) ‘there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators;’ and (3) the facts show a *single nationwide* RICO conspiracy exists.” Gilbert v. Bank of America, No. C 13-01171 JSW, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (emphasis in original) (quoting Butchers Union, 788 F.2d at 539).

The Court has personal jurisdiction over other named RICO defendants. But even assuming that plaintiff has met his burden of showing that no other district court could exercise jurisdiction over all of the alleged co-conspirators, he has not alleged the existence of a single nationwide conspiracy of which Brown is a party. As discussed in the Court’s treatment of Westport’s motion to dismiss the RICO claim, *infra*, plaintiff has failed. at the least, to allege the requisite “pattern of racketeering activity.”

Moreover, even if plaintiff had pled a RICO conspiracy, he would still fail to plead facts subjecting Brown to RICO liability. Each RICO defendant must have been “aware

[15]Some courts have concluded that § 1965(d), not (b), is the source of nationwide jurisdiction over RICO defendants. See Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1182 n.4 (C.D. Cal. 1998). In the Ninth Circuit, however, subsection (b) is the source of that jurisdiction. Id.; see Butcher’s Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986). Therefore, plaintiff’s invocations of § 1965(d) to support jurisdiction, Dkt. No. 78 at 3–4, are unavailing.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 19 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

of the essential nature and scope of the enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993). Further, a defendant must have "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004) (brackets in original) (quoting Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001)). Courts consider whether the alleged "words, actions and relationships between the parties" raise an inference of an agreement. Oki Semiconductor Co. v. Wells Fargo Nat'l Bank, Ass'n, 298 F.3d 768, 775 (9th Cir. 2002).

The FAC includes conclusory allegations that Brown is a member of a RICO "Enterprise" and a "co-conspirator," and alleges that Brown was part of a "confidential agreement . . . not to disclose the amount of payments made" by Westport to I&S and Greines. See FAC ¶ 318. But the only factual basis for Brown's involvement is that he drafted objections to the subpoena served on Westport's Kansas offices. Providing limited legal services to one party to an alleged RICO conspiracy is insufficient to make an attorney liable under RICO. See Baumer, 8 F.3d at 1344 (no RICO liability for attorney who prepared a single partnership agreement and sent two letters in a Chapter 7 proceeding); Azrielli v. Cohen Law Offices, 21 F.3d 512, 521–22 (2d Cir. 1994) (no RICO liability for defendant who merely acted as an attorney for other individual defendants and therefore did not "participate[] in the management or direction of a RICO enterprise"). Morever, there are no factual allegations that support a conclusion that Brown was "aware of the essential nature and scope" of a criminal enterprise and "intended to participate in it." The FAC does not allege any facts that suggest a relationship between Brown and any party besides Westport, let alone a conspiracy between Brown and those parties to engage in criminal activity. Again, the only non-conclusory allegations against Brown involve refusing to produce documents on behalf of a legal client in response to an out-of-state subpoena. Under these circumstances, the "ends of justice" do not require the assertion of national jurisdiction over Brown.

### D. Conclusion

In accordance with the foregoing, the Court GRANTS Jay Brown's motion to dismiss all claims against him for lack of personal jurisdiction. Because plaintiff already amended his complaint once after Brown filed a motion to dismiss for lack of personal jurisdiction on the same grounds discussed herein, see Dkt. Nos. 42 & 56, and because

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 20 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

further amendment would be futile, the claims against Brown are dismissed without leave to amend. See California ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile.").

## IV. WESTPORT'S MOTION TO DISMISS

### A. Legal Standards

1. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. The objection presented by this motion is that the court has no authority to hear and decide the case. This defect may exist despite the formal sufficiency of the allegations in the complaint. See T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D. N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964) (the formal allegations must yield to the substance of the claim when a motion is filed to dismiss the complaint for lack of subject matter jurisdiction). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).

2. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Polic Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 21 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." (citing Twombly and Iqbal)). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 22 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B. Analysis**

1. Vexatious Litigant Prefiling Requirements

First, Westport argues that the Court should dismiss this action or impose prefiling requirements on plaintiff based on vexatious litigant orders previously issued by California courts. This district's Local Rules permit the Court, "at any time," to "order a party to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions, or other amounts which may be awarded against a vexatious litigant, and [] make such other orders as are appropriate to control the conduct of a vexatious litigant." C.D. Cal. L.R. 83-8.2. "Such orders may include . . . a directive to the Clerk not to accept further filings from the litigant without payment of normal filing fees and/or without written authorization from a judge of the Court or a Magistrate Judge, issued upon such showing of the evidence supporting the claim as the judge may require." Id. Any such order must be "based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken." Id. 83-8.3.

The Ninth Circuit has cautioned that vexatious litigant "pre-filing orders should rarely be filed." De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990). A district court considering whether to impose pre-filing restrictions must (1) provide the litigant with an opportunity to oppose the order before it is entered; (2) create an adequate record of review including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed," showing "[a]t the least . . . that the litigant's activities were numerous or abusive"; (3) make "substantive findings as to the frivolous or harassing nature of the litigant's actions"; and (4) narrowly tailor the order "to closely fit the specific vice encountered." Id. at 1147–48.

Westport points out that the Local Rule permits a district court, "at its discretion," to "proceed by reference to the Vexatious Litigants statute of the State of California, Cal.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 23 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

Code Civ. Proc. §§ 391–391.8. Based on this, Westport asks the Court to "adopt the existing orders of two California courts declaring Dr. Mir to be a vexatious litigant for purposes of this Action and any future related action." Dkt. No. 57 at 7–8. Westport also asks the Court to retroactively impose those state court orders so as to dismiss the instant action for lack of subject matter jurisdiction.

The Court declines Westport's request. The Local Rules permit a court to look to the California vexatious litigant statute for guidance, not to adopt a state court's previous vexatious litigant order and impose it retroactively on cases filed in federal court. Westport cites no case in which a federal district court has taken such action, which the Court finds would be inefficient and unjustified at this stage.

2. Rooker-Feldman Doctrine

Westport argues that all claims against it are barred by the Rooker-Feldman doctrine. This doctrine stems from the principle that "[f]ederal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions." Dubinka v. Judges of Sup. Ct., 23 F.3d 218, 221 (9th Cir. 1994) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482–86 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923)). "This rule applies even when the state court judgment is not made by the highest state court, and when the challenge to the state court action involves federal constitutional issues." Dubinka, 23 F.3d at 221.

To determine whether the Rooker-Feldman doctrine bars jurisdiction, courts must analyze "whether the constitutional claims are 'inexplicably intertwined' with the state court's rulings in a particular plaintiff's case." Id. (quoting Feldman, 460 U.S. at 483–84 n.16). The Ninth Circuit applies a narrower conception of "inextricably intertwined" than have some other courts. As the court has explained:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker–Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 24 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

> plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker–Feldman does not bar jurisdiction.

Kougasian v. TMSL, 359 F.3d 1136, 1140 (9th Cir. 2004) (quoting Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)). In Kougasian, for example, a widow whose husband died in a ski accident brought two unsuccessful state court suits against the operator of the ski area, and then brought a diversity action in federal court. Id. at 1137–39. The Ninth Circuit held that Rooker-Feldman did not bar the plaintiff's federal action to the extent that the plaintiff's claims for relief were based on allegations of extrinsic fraud on the state court, including an allegedly false declaration submitted by the state court defendants. Id. at 1140–41. But even with regard to claims not based on such fraud—or "even if the federal court conclude[d] that there was no extrinsic fraud"—the court held that Rooker-Feldman did not apply. See id. at 1142–43. The court reasoned:

> Kougasian does not, in these causes of action, allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock. It is true that factual allegations and legal claims in these four causes of action are almost identical to the allegations and claims asserted in state court . . . but that is not sufficient reason to find the causes of action barred by Rooker–Feldman.

Id. at 1142. The Court explained that the federal claims were "inextricably intertwined" "[i]n an ordinary language sense" with issues decided in the previous state litigation, but not within the "narrow and specialized meaning" of the Rooker-Feldman doctrine. Id. The Supreme Court has since echoed these principles, explaining that the Rooker-Feldman doctrine does not

> stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 25 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

The Court concludes that the Rooker-Feldman doctrine does not bar plaintiff's claims. It is true that many of the allegations made by plaintiff appear to have been litigated in state courts. The FAC also includes extensive allegations detailing what plaintiff sees as the state courts' improper adjudication of previous litigation. But plaintiff does not seek "relief from a state court judgment," but rather damages based on, among other things, extrinsic fraud upon the state courts. Kougasian, 359 F.3d at 1140. Westport's argument implicates the Ninth Circuit's concern that if Rooker-Feldman meant that "a federal plaintiff can never raise issues that are 'inextricably intertwined' with issues already decided in state court litigation . . . . Rooker-Feldman would in some cases give greater preclusive effect to state court judgments than the states themselves would give those judgments." Id. at 1142–43. Westport has not raised a preclusion argument, and the Court will not raise it sua sponte, especially given the limited record before the Court concerning the state court proceedings. Cf. Exxon Mobil, 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter."). Because the Court has subject matter jurisdiction over the instant action, the Court turns to the merits of the FAC.

3. Plaintiff Fails to State a Federal Claim Against Westport

Westport argues that each of plaintiff's federal claims against Westport must be dismissed for failure to state a claim. The Court agrees.

a. Plaintiff's 42 U.S.C. § 1981 Claim

Section 1981 prohibits racial discrimination that interferes with the making and enforcement of contracts and the exercise of other rights under the law. See 42 U.S.C. § 1981; St. Francis Coll. v. Al-Khazraji, 481 U.S. 504, 409 (1987). The statute covers conduct by both private and state actors. 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."); Runyon v. McCrary, 427 U.S. 160, 170 (1976) ("42 U.S.C. § 1981 . . . reaches purely private acts of racial discrimination."). To state a

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 26 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

claim under § 1981, a plaintiff must plead the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mercer v. Southwest Airlines Co., No. 13-cv-05057-MEJ, 2014 WL 7206881, at *5 (N.D. Cal. Dec. 18, 2014). "Proof of intent to discriminate is necessary to establish a violation of section 1981." Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1313 (1992), abrogation in other respects recognized by Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1055 (9th Cir. 2008). "Thus, while the federal rules require only that plaintiffs aver intent generally, Fed. R. Civ. P. 9(b), under section 1981 they must at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against them." Id.

Plaintiff supports this claim with allegations that he is from Pakistan and is a Muslim. FAC ¶ 196. Plaintiff alleges that defendants "personally knew from Debtor examinations that Plaintiff had Pakistani origin and ethnicity and motivated by discrimination against Plaintiff based on his ethnicity and in retaliation for 9/11 incident **conspired to commit** the acts alleged . . . to interfere with right to make contracts and enjoy of all benefits, privileges, terms and conditions of contractual relationship to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of his person and property." Id. ¶ 197 (emphasis in original) (quoting 42 U.S.C. § 1981). As to Westport, plaintiff alleges that Westport "interfered with Plaintiff's right to make a valid settlement agreement protecting his interests," "improperly influenced the state court judge" in obtaining an order enforcing the Settlement Agreement," and "conspired with" I&S and Greines not to disclose attorneys' fees paid by Westport pursuant to an insurance policy, preventing plaintiff from "present[ing] the evidence of double dipping to the state court." Id. ¶¶ 201, 202, 212, 227–29.

Plaintiff fails to state a claim against Westport under § 1981. A plaintiff proceeding under the statute must "allege facts that would support an inference that defendants intentionally and purposefully discriminated" against him. Kiewit Pac. Co., 976 F.2d at 1313. Here, plaintiff only alleges in a conclusory matter that "Defendants" knew that plaintiff was Pakistani, and were "motivated by discrimination against Plaintiff based on his ethnicity and in retaliation for 9/11." FAC ¶ 197. Plaintiff alleges no

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 27 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

pattern of racial discrimination, indications of racial bias, or other facts that would support an inference that Westport intentionally and purposefully discriminated against plaintiff on the basis of his race. See Jones v. City of Los Angeles, No. CV 09-03162-MMM (VBK), 2009 WL 37116622, at *9 (C.D. Cal. Oct. 30, 2009) ("Here, Plaintiffs make only the most general conclusory allegations that Defendants' conduct was motivated by their race. Such conclusory allegations are insufficient."); see also Iqbal, 556 U.S. at 686 (rejecting as insufficient to withstand a motion to dismiss allegations that defendants discriminated against plaintiff "on account of [his] religion, race, and/or national origin and for no legitimate penological interest" (brackets in original)); Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 & n.3 (9th Cir. 1984) (holding insufficient to support a § 1983 claim bare allegations that defendants discriminated against plaintiff and other African-Americans, explaining that such allegations were "unsupported by any facts as to how race entered into any decisions"). Instead, he merely speculates that his national origin or religion had something to do with defendants' decisions. Compare Evans v. McKay, 869 F.2d 1341, 1345 (9th Cir. 1989) (finding racial animus sufficiently pled where plaintiffs alleged "overt acts coupled with some direct evidence" of animus, consisting of a statement that "whites have no rights" on a Native American reservation), with Mannery v. Miller, No. 07-315, 2007 WL 1395358, at *3 (W.D. Pa. May 9, 2007) (dismissing § 1981 claim where plaintiff failed to substantiate "broad allegations of racial discrimination" with facts showing treatment distinct from that given to non-minorities).

Even if plaintiff's allegations of discrimination were supported by any factual content, they relate only to his national origin and religion, not race. A § 1981 plaintiff must allege that he "was subjected to intentional discrimination based upon his or her race, rather than solely on the basis of the place or nation of [his] origin or [his] religion." Pavon v. Swift Transp. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999); see also Sagana v. Tenorio, 384 F.3d 731, 738 (9th Cir. 2004) (explaining that § 1981 "does not protect against discrimination on the basis of . . . religion"); Anooya v. Hilton Hotels Corp., 744 F.2d 48, 49–50 (7th Cir. 1984) (per curiam) (affirming dismissal of a § 1981 claim premised on termination for employment because the plaintiff was "of Iraqi background"); Quraishi v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc., Civil No. CCB-13-10, 2013 WL 2370449, at *2 (D. Md. May 30, 2013) ("[T]o the extent Ms. Quraishi seeks to base her § 1981 claim on racial discrimination she faced because she is South Asian and/or of Pakistani origin, her claim must fail," where

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 28 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

plaintiff used the word "race" but only alleged facts supporting discrimination on the basis of national origin). For these reasons, plaintiff's § 1981 claim must be dismissed.

b. Plaintiff's 42 U.S.C. § 1983 Claim

To state a claim under § 1983, a plaintiff must (1) allege the violation of a right secured by the U.S. Constitution and laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). An individual acts "under color of state law" when he has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 229, 326 (1941). Thus, "a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." West, 487 U.S. at 48.

Plaintiff styles his § 1983 claim as premised on a "conspiracy to double dip attorneys' fees." But plaintiff has failed to allege state action by Westport, a private insurance company alleged to have paid attorneys' fees pursuant to an insurance policy, and then engaged in a conspiracy to cover up those payments while its insured sought to enforce a judgment regarding those same attorneys' fees.

Plaintiff argues that he has sufficiently pled state action through "allegations . . . that Defendants and each of them conspired with immune officials, the state court judge and justices to unlawfully enforce" the Settlement Agreement." Dkt. No. 79 at 15 (citing FAC ¶ 238). But as to Westport specifically, plaintiff alleges only that Westport participated in negotiating the Settlement Agreement, then "entered into a confidential agreement with" I&S and FRBC not to disclose the insurance payments, and resisted a subpoena directed at those insurance payments. "[M]erely resorting to the courts . . . does not make a party a co-conspirator or a joint actor with the judge." Price v. State of Hawaii, 939 F.2d 702, 708 (9th Cir. 1991) (citing Dennis v. Sparks, 449 U.S. 24, 28 (1980)). And the other factual allegations directed at Westport suggest, at most, a conspiracy with other non-state actors. Plaintiff simply has not pled any facts supporting his conclusory claim that Westport conspired with any state official. Cf. Simmons v. Sacramento Cnty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff's

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 29 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient."). State action is therefore lacking.[16]

Moreover, it is also unclear what deprivation of a right " 'secured by the Constitution and the laws' of the United States" plaintiff claims Westport caused. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). "Where multiple defendants are involved, the pleadings must establish a nexus between each defendant's actions and the alleged deprivation of plaintiff's constitutional rights." Drawsand v. F.F. Props., L.L.P., 866 F. Supp. 2d 1110, 1120 (N.D. Cal. Sept. 30, 2011) (citing Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)). Paying an insured's attorneys' fees pursuant to a malpractice liability insurance contract does not violate the Constitution, and the FAC contains no factual allegations to support its conclusory claims that Westport violated his rights to "due process and equal protection." FAC ¶ 258. For these reasons, plaintiff has failed to state a § 1983 claim.

c. Plaintiff's 42 U.S.C. §§ 1985 and 1986 Claims

A claim for conspiracy to violate constitutional rights cannot survive without a cognizable violation of constitutional rights under § 1983. Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 930 (9th Cir. 2004) (citing Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989)). Similarly, "there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." Santistevan v. Loveridge, 732 F. 2d 116, 118 (10th Cir. 1984). Because plaintiff has failed to state a § 1983 claim against Westport, plaintiff's §§ 1985 and 1986 claims against Westport also fail.

---

[16]In his opposition, plaintiff also claims that state action is supported because "Defendants filed lis-pendens and several writs of execution and attached $45,000 of Plaintiff's money." Dkt. No. 79 at 15. But the allegations that plaintiff cites in support of this argument only refer to I&S and FRBC. See id.; FAC ¶¶ 239, 240. As discussed above, state action must be established as to each defendant. Drawsand, 866 F. Supp. 2d at 1120. Therefore, even if this argument has merit as to another defendant, it is unavailing as to Westport.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 30 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

d. Plaintiff's RICO Claim

Plaintiff brings his seventh claim against Westport and other defendants under 18 U.S.C. § 1964(c), which provides a civil remedy for a plaintiff injured by a violation of 18 U.S.C. § 1962. Plaintiff alleges that Westport violated § 1962(c) as well as § 1962(d), which criminalizes conspiracies to violate the other subsections of § 1962. See FAC ¶¶ 285, 288. Section 1962(c) provides that "[i]t shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A violation of § 1962(c) consists of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985); Turner v. Cook, 362 F.3d 1219, 1228 (9th Cir. 2004). "[R]acketeering activity" includes any act indictable under specific provisions of Title 18 of the U.S. Code. 18 U.S.C. § 1961(1)(B). Mail fraud and wire fraud fall within this category. See 18 U.S.C. § 1961(1) (identifying § 1341 (mail fraud) and § 1343 (wire fraud) as predicate acts under RICO); Turner, 362 F.3d at 1229. "To prevail on a civil RICO claim, a plaintiff must prove all of these elements, and, in addition, show that the defendant caused injury to his business or property." Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1021 (9th Cir. 2001). To show this "[f]ifth element," a plaintiff must show (1) "that his injury was proximately caused by the fraudulent conduct," and (2) "that he has suffered a concrete financial loss by documenting the amount of damages to which he is entitled." Id.

Plaintiff's RICO claim against Westport fails because plaintiff has failed to allege a pattern of racketeering activity. "In order to constitute a 'pattern,' there must be at least two acts of racketeering activity within ten years of one another. However, while two predicate acts are required . . . they are not necessarily sufficient." Turner, 362 F.3d at 1229 (citation omitted). To demonstrate a "pattern," a plaintiff must allege "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1985). To satisfy this "continuity requirement," a plaintiff must plead "either 'a series of related predicates extending over a substantial period of time [i.e., closed-ended continuity],' or 'past conduct that by its nature projects into the future with a threat of repetition [i.e.,

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 31 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

open-ended continuity].’ ” Howard v. Am. Online Inc, 208 F.3d 741, 750 (9th Cir. 2000) (brackets in original) (quoting H.J. Inc., 492 U.S. at 242)).

The Ninth Circuit and district courts within it have repeatedly rejected RICO claims consisting of “a single alleged fraud with a single victim.” Medallion Tele. Enter., Inc. v. SelecTV of Cal., Inc., 833 F.2d 1360, 1364 (9th Cir. 1987). In Medallion, for example, defendant broadcasters allegedly misrepresented that they had commitments from television stations to pay to telecast a boxing match, and induced the plaintiffs to enter into an ill-fated joint venture through numerous predicate telephone calls and related mailings. Id. at 1362, 1364. Affirming the district court’s ruling that there was, as a matter of law, no “pattern of racketeering activity,” the Ninth Circuit reasoned that “[a]ll of SelecTV’s assertions about the number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights.” Id. at 1363–64. Similarly, in Sever v. Alaska Pulp Corp., the plaintiff, who had advocated for reforms adverse to his employer’s business interests, alleged that his employer had terminated him and then continued to retaliate by engaging in various acts to blacklist plaintiff from the industry. 978 F.2d 1529, 1532–33 (9th Cir. 1992). The Ninth Circuit affirmed the district court’s conclusion that there was no pattern of racketeering alleged. First, the court reasoned that “although Sever alleges a number of ‘acts,’ [defendant’s] collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts.” Id. at 1535. The court also noted that “there was but a single victim involved” and that there was no suggestion that the defendants would continue the alleged behavior after they successfully blacklisted the plaintiff, or intended to harm anyone other than the plaintiff. Id.

The court in Ricotta v. State of California applied these and other Ninth Circuit precedents to allegations that state officials, attorneys, and other individuals conspired to deny a RICO plaintiff fair marriage dissolution proceedings by engaging in extortion, bribery, perjury, undue influence, and other acts over the course of two trials, numerous motions and hearings, four separate appeals, and several state bar complaints. 4 F. Supp. 2d 961, 968–71 (S.D. Cal. 1998). The court found no pattern of racketeering, reasoning that “[s]imilar to Sever, in this case Plaintiff alleges that the defendants engaged in various activities, all with the single purpose of depriving him of a fair dissolution proceeding” and “causing him to lose his estate.” Id. at 978. The court noted that there

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 32 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

was "only one single victim involved," that "once the Defendants successfully 'took' Plaintiff's estate there was no need for any continued tampering," and that there was "no claim that the Defendants intended to harm anyone but Plaintiff." Id. See also Durning v. Citibank, Int'l, 990 F.2d 1133, 1139 (9th Cir. 1993) (despite allegations of "numerous predicate acts of mail and wire fraud" and the existence of multiple victims, no pattern of racketeering where "all of those acts arose from a single, isolated event" of distributing one misleading document in conjunction with a single issuance of bonds); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366 (9th Cir. 1992) (series of acts including theft, blackmail, and extortion did not satisfy continuity requirement because all actions were directed at the prosecution of a single tort suit, and "there was no threat of activity continuing beyond the conclusion of that suit"); Jarvis v. Regan, 833 F.2d 149, 152–53 (9th Cir. 1987) (pattern requirement not satisfied by allegations that legal aid organizations committed several acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399 (9th Cir. 1986) (no "threat of continuing activity" where the complaint alleged the fraudulent diversion of a single shipment of products through multiple acts of mail and wire fraud); Richardson v. Reliance Nat'l Indem. Co., No. C 99-2952 CRB, 2000 U.S. Dist. LEXIS 2838, at *25 (N.D. Cal. 2000) ("In sum, a scheme involving ongoing activity, numerous victims, and the risk of continued illegal acts constitutes a violation of RICO, while a scheme, like this one, involving a single victim and isolated transactions does not.").

Although plaintiff divides his allegations into over a dozen alleged "predicates," each of those predicate acts involves attempts to obtain and enforce a judgment in a single case.[17] As in Wollersheim and Ricotta, all of the defendants' allegedly wrongful activity is directed at the prosecution of a single lawsuit. There is but a single object alleged—collecting on an allegedly inflated judgment against plaintiff—and only a single victim involved. There is no indication that the alleged RICO enterprise would continue the allegedly unlawful behavior after collecting on the judgment against plaintiff.

[17]The Court also notes that plaintiff effectively doubles his number of alleged predicates by counting separately (1) the filing and serving of motions and writs by I&S and Greines and (2) the state court's posting of those same motions and writs on the court's website. See FAC ¶¶ 295–354.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

Moreover, there is no allegation suggesting that any of the defendants, including Westport, intend to harm other victims in the future. Accordingly, even assuming plaintiff pled any racketeering activity,[18] he has not pled a "pattern" of such activity with the continuity element required in the Ninth Circuit. The § 1962(c) claim fails for that reason.

The Ninth Circuit has held that "the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." See Howard, 208 F.3d at 751. Therefore, plaintiff's claim under § 1962(d) must be dismissed as well. See Streamcast Networks, Inc. v. Skype Techs., S.A., No. CV 06-391 FMC (Ex), 2006 WL 5437323, at *8 n.4 (C.D. Cal. Sept. 14, 2006) ("Because Streamcast has failed to plead sufficient facts to state a claim under 18 U.S.C. 1962(c), its conspiracy claim under 1962(d) necessarily fails as well." (citing Wagh v. Metris Direct, Inc., 363 F.3d 821, 831 (9th Cir. 2003)).

4. Dismissal Without Leave to Amend

As discussed above, all of plaintiff's federal claims against Westport fail to state a claim upon which relief could be granted. Plaintiff filed the First Amended Complaint as of right after Westport filed a motion to dismiss the original complaint on the same essential grounds raised in the instant motion to dismiss. See Dkt. Nos. 34, 56; see also Fed. R. Civ. P. 15(a)(B) (providing that a party may "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)"). Because plaintiff has already amended his complaint once, and because "it is clear that the complaint could not be saved by amendment," Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008), the Court dismisses the federal claims against Westport without leave to amend.

---

[18] As against Westport, this assumption is highly questionable given that Westport's alleged predicate acts consist only of concealing insurance payments and records thereof. See Cobb v. JPMorgan Chase Bank, N.A., No. 13-cv-01955-JSW, 2013 WL 6201414, at *14–15 (N.D. Cal. Nov. 27, 2013) (finding that alleged mail and wire fraud could not support a RICO claim where the allegations pertained to the plaintiff's "efforts to obtain documents from various institutions or individuals" and therefore concerned a "scheme to prevent [plaintiff] from obtaining records," not a "scheme to obtain money or property").

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 34 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

5. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against Westport

A district court may "decline to exercise supplemental jurisdiction" over a state law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(4). The Supreme Court has advised that, absent another ground for federal subject matter jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted); see also Hodge v. Mountain States Tel. & Tel. Co., 555 F.2d 254, 261 (9th Cir. 1977) ("In light of our disposition of the federal claims, we feel that it is appropriate to remand the state law claims to the district court with instructions to dismiss for want of federal jurisdiction.").

This case is in its early stages, and the Court has determined above that plaintiff cannot maintain a federal claim against Westport. Plaintiff alleges that the court has diversity jurisdiction, which would provide a separate ground for federal subject matter jurisdiction. FAC ¶ 2. But a party asserting diversity jurisdiction must show complete diversity of citizenship and that it is "more likely than not that 'the matter in controversy exceed[s] the sum or value of $75,000, exclusive of interest and costs.' " Mattel, Inc. v. Bryant, 441 F. Supp. 2d 1081, 1093 (C.D. Cal. 2005). Plaintiff alleges that he "is, and was at all times mentioned, domiciled in [the] State of California," and has resided in Los Angeles County since 1972. FAC ¶¶ 3, 18. Plaintiff also alleges that Greines Martin, FRBC, and I&S are California business entities, and that many individual defendants reside in California. Id. ¶¶ 19–39. Therefore, complete diversity is lacking, and the Court declines to exercise supplemental jurisdiction at this time over the state-law claims against Westport. The state claims are dismissed without prejudice for lack of federal jurisdiction.

## V. SANCTIONS MOTIONS

On December 15, 2014, both Westport and Brown filed sanctions motions pursuant to Federal Rule of Civil Procedure 11. Dkt. Nos. 70, 71. Plaintiff filed an opposition to

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 35 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

the sanctions motions on December 30, 2014.[19] Dkt. No. 81. Neither Westport nor Brown filed a reply to plaintiff's opposition.

**A. Legal Standard**

Under Federal Rule of Civil Procedure 11, a court may impose sanctions upon attorneys or unrepresented parties for submitting papers to a court that are frivolous, legally unreasonable, baseless, or filed for an improper purpose, such as harassment. Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir.1996). All pleadings and other motions filed with a court must be signed by an attorney or the unrepresented party, certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances": (1) the paper is not presented for an improper purpose; (2) the claims have a valid legal basis; and (3) there is factual support for the allegations. Fed. R. Civ. P. 11(b). Rule 11 imposes on attorneys an "objective standard of reasonableness under the circumstances." Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir. 1986) (internal quotation marks omitted). However, Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Greenberg v. Sala, 822 F.2d 882, 887 (9th Cir. 1987) (quoting Fed. R. Civ. P. 11 advisory committee's note).

The imposition of Rule 11 sanctions is a matter within the discretion of the trial court. Fed. R. Civ. P. 11(c); see id. advisory committee's notes (1993 amendments) ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation."). Any Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11. "Although Rule 11 applies to pro se plaintiffs, the court must take into account a plaintiff's pro se status when it determines whether the filing was reasonable." Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994) (per curiam).

[19] The Court notes that this opposition was untimely pursuant to Local Rule 7-9.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 36 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** ‘O’

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

**B. The Parties’ Arguments**

Westport argues that plaintiff filed this lawsuit to avoid California state court vexatious litigant pre-filing requirements, and in violation of the Rooker-Feldman doctrine. The Court has already rejected those arguments in Westport’s motion to dismiss, and they fare no better in a sanctions motion. Westport also argues that plaintiff’s substantive claims lack legal justification for the same reasons discussed in its motion to dismiss, and were filed in bad faith without evidentiary support. Brown’s sanctions motion largely echoes his motion to dismiss for lack of personal jurisdiction, contending that jurisdiction over him was so clearly lacking that plaintiff must have filed the lawsuit against him for an improper purpose. Finally, although neither party raised these arguments in their motions to dismiss, Westport and Brown contend that the conduct alleged is protected by California’s litigation privilege, Cal. Civil Code § 47(b), and subject to a special motion to strike a strategic lawsuit against public participation, Cal. Code Civ. P. § 425.16.

Plaintiff’s opposition to the sanctions motions largely consists of arguments made in opposition to the motions to dismiss, which the Court does not repeat here. Plaintiff also argues that Westport and Brown failed to serve plaintiff with the Rule 11 motions and wait twenty-one days before filing them, as required by law. See Fed. R. Civ. P. 11(c)(1) (“The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.”); Barber v. Miller, 146 F.3d 707, 710–11 (9th Cir. 1998) (explaining this “safe harbor” provision and a grant of sanctions where the safe harbor period was not provided). Plaintiff also denies that the statutory litigation privilege applies to Westport’s alleged conduct, pointing to the statute’s exclusion of “any communication made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies.” Cal. Civ. Code § 47(b)(3).

**C. Discussion**

Although the Court has determined above that it lacks personal jurisdiction over Brown, and that plaintiff has failed to state a federal claim against Westport, the Court does not find than award of sanctions is warranted at this time. Plaintiff is proceeding

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 37 of 38

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| Case No. | 2:14-4132-CAS(FFMx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | JEHAN ZEB MIR, MD v. GREINES, MARTIN, STEIN & RICHLAND, ET AL. | | |

pro se, and not all of defendants' arguments for dismissal were persuasive. Moreover, defendants have not contested plaintiff's assertion that defendants did not provide the twenty-one-day safe harbor period required by Rule 11. Accordingly, both Rule 11 motions are DENIED without prejudice.

## VI. CONCLUSION

In accordance with the foregoing, Jay Brown's motion to dismiss is GRANTED, and all claims against Brown are DISMISSED without leave to amend. With respect to the federal claims against Westport only, Wesport's motion to dismiss is GRANTED and those claims DISMISSED without leave to amend. The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, and dismisses the state-law claims without prejudice for lack of jurisdiction. The sanctions motions filed by Brown and Westport are DENIED without prejudice.

IT IS SO ORDERED

00 : 12

Initials of Preparer CMJ

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 38 of 38